Case number 22-1386 Taylor Pritchard versus USA. Oral argument 15 minutes per side. Mr. Gumina for the appellant. Good morning and welcome to the Court of Appeals for the Sixth Circuit. I want to assure counsel that we are prepared for your case this morning. We have read your briefs. Also I recognize that counsel for the appellant has reserved three minutes of rebuttal. With that you may begin. Thank you. Good morning, Your Honors. May it please the Court, Nicholas Gumina appearing on behalf of the appointed appellant, Taylor Pritchard. Your Honors, the District Court must be reversed because Mr. Pritchard's claims are not barred by the combatant activities exception to the FTCA. The plain language of the FTCA exempts claims arising out of the combatant activities of the combatant in a time of war. And Mr. Pritchard's claims simply do not arise out of any combatant activities. Therefore, under the plain language of the statute, his claims must be allowed to proceed. Even under the broad interpretation articulated in Ferries v. United States, Mr. Pritchard still wins. As the Court made clear in Ferries, the doctrine only applies to claims of servicemen, to injuries of servicemen that arise out of or are in the course of activity incident to service. Mr. Pritchard was not a serviceman at the time of his injuries. He was not a serviceman at the time of the malpractice. He was a civilian, which therefore bars application of the Ferries doctrine to his claim. None of the rationales underpinning Ferries apply to this case. He was a private citizen not subject to military control. There was no distinctly federal relationship between Mr. Pritchard and the military. He is of his injuries. And finally, his claim would not involve the judiciary in sensitive military matters. There's no claim here related to the military's determination of whether an applicant is fit for duty. And I think it is notable that nearly every case cited by the United States involving either a pre-enlistment medical examination or a negligent enlistment claim involves injuries that occurred while the service member was on duty, such as Satterfield versus United States, where this court held that Ferries barred a claim where a serviceman was killed by three other servicemen. Now, the gravamen on that complaint included a claim of negligent enlistment. However, ultimately, what was being alleged is that the military was negligent in their supervision, which directly called into question the chain of command in terms of reports that had been made about three other servicemembers. The same is true of the Siddiqi case involving the Marine Corps, where the plaintiff alleged that their son was negligently misled into enlisting and that the... Well, counsel, you're relying upon Satterfield, and Satterfield doesn't really reach the issue, but it does cite a whole series of cases in which other circuits have held that claims from pre...involving pre-enlistment physicals are barred by Ferris. Now, I understand that I think in most, if not all of those cases, the person wasn't a member of the military at the time, the pre-enlistment physical, which makes sense from the definition, but then did go on to enlist in the military. So am I right so far? That's correct, your honor. And so what, so what difference does it make in your estimation, whether the person did or did not ultimately join the military in terms of whether at the time of the, of the alleged negligence in all those other cases that the person also was not a member of the military at the time? Well, I think it ultimately comes down to when the injuries occurred. In Ferris, the Supreme Court, as well as in Johnson, discussed injuries to a service member. And in Satterfield, the court cited Healy as well as Hall. But in Healy, the claim was that the, the military was negligent for qualifying the applicant as fit for duty, despite having a heart condition that should have disqualified them. However, the injury that resulted occurred during basic training, which was a result of aggravation of that pre-existing heart condition. So ultimately, the claim related directly to the injury that was the result of basic training. And that is certainly incident to service. Hall is another instance where the, it was a question of whether the individual was medically fit for duty. But ultimately, the claim arose out of the individual being injured during basic training, admitted to a hospital, and ultimately dying, where the injuries that actually occurred, occurred during basic training after they had been sworn in. And I think that's one of the distinguishing factors here is that... When did, when did the negligence occur? The negligence occurred, the alleged negligence in those cases occurred during pre-induction physicals. And so I think, but the injury, which when we're looking at any tort claim, and when a claim accrues, it's ultimately when an injury has occurred, typically speaking, and the individual can allege all the elements in a complaint. When we're suing for the injury, there's no cause of action for the individual in Hall or the individual in Healy or Satterfield until they've actually suffered and sustained an injury. And that always occurred while they were on active duty, generally in basic training. And so I think that's one of the distinguishing factors. And those questions, as it relates to whether they should have been admitted to the military, all relate to the military's eligibility criteria and what they are specifically doing to determine whether somebody is fit for duty. And that's not what's being alleged here. The allegation of negligence relates to the blood draw and the failure to properly supervise Mr. Pritchard after the blood draw to check and see if he had showed any signs of faintness, which resulted in their injury. There's no second guessing the determination that he was either fit for duty or not fit for duty. And in fact, he was determined to be unfit for duty based on the injuries he sustained here. And I think what the United States is asking this court to do is really extend fairies beyond what has ever been applied to, which is to apply it to a private civilian. In their brief, they repeatedly refer to Mr. Pritchard as an applicant. He's an applicant to the military. The MEPS prescreening form they cite to it refers to him as an applicant. It notes that the information, the disclosure of information there is voluntary and that it's for the purposes of determining eligibility for enlistment in the armed forces. So I think that is significantly different than the cases that the United States has cited. And when you look at the criteria that the Supreme Court has articulated in fairies and subsequently in Johnson, um, those, those factors are important because fairies, I don't think anyone can argue fairies is not an expansion of the plain language of the F. D. C. A. So we're good to depart from the plain language of the statute. There needs to be a good reason to do it. And here, Mr Pritchard was not a member of the armed forces. So his relationship between the government or the military is not federal in nature. He is an applicant to the military. He's applied for entry into the National Guard. And until he is actually sworn in, he is not a member of any military branch. What is your, what is your strongest case? Would you say? What do you think is the most on point here? Well, your honor, I think the Hadassah case, which is a district court case, is is on point. And I know that the, um, court, the district court in that case, and it was affirmed by the First Circuit. Um, neither the district court of the First Circuit cited, um, or made the decision as it relates to whether fairies applied. Um, however, the court accepted the party's, um, agreement that fairies was really inapplicable in that situation. Um, and you're saying your strongest case is one that didn't deal with this issue. I'm saying it's probably is one of the most analogous cases because he was, um, a sustained injuries as a member of the United States Marine Corps Ready Reserve, um, which was a delayed entry program into the Marine Corps. Um, it was the injuries that were sustained were being done were sustained on military property during military exercises being conducted by military personnel. However, the parties agreed based on his status. He was not on active duty, and it wasn't that fairies didn't apply. And I think it's jurisdictional hurdle, and it's incumbent on the parties as well as the court to recognize whether there is proper jurisdiction over a claim. And so it's, um, perhaps a bit disingenuous to say that the district court in the First Circuit didn't consider the jurisdictional issue of whether fairies apply simply because it was not, um, addressed directly. So in that instance, I think it is, um, compelling in that his the individual status in the Hadousa case meant that he was not entitled to any benefits. He was not in the active service, and therefore, his claims were not barred by the fairies doctrine. And in terms of the distinctly federal relationship, we're talking about situations where, um, first and foremost, the federal relationship has always been discussed in the context of the government and members of the service. Mr. Pritchard's not a member of the service, but members of the service are, by definition, subject to a chain of command subject to direct order by their superiors. They're paid by the government. Their benefits are received through the government. They have all of their health insurance. Everything is provided by the government. They are living in a very structured environment, um, at the direction of military personnel, military supervisors. And that is not the situation here. So it is difficult to argue that simply because he was trying to enroll or enlist in the military, that it's a federal relationship and the benefit system is one of the main factors. And I understand that it is not necessarily this positive. Um, does it make any difference here that if we look at the chain of command with respect to the people that were conducting this physical, as opposed to your client, and I understand that the distinction that you're making, but is it correct that if we were to say the Ferris doctrine doesn't apply, that essentially a jury would be determining what the standard of care was, that numbers of the, of the military or military contractors were supposed to employ on a military facility in connection with a military activity. In other words, an examination to see if somebody is fit for service. I think the ultimate issue for the jury to decide is going to be whether they were negligent and what they did and what the standard of care applicable, as it relates to Mr. Wolf. Certainly he's not able to be sued for malpractice. So it's just a general negligence claim. Um, but I ultimately think it's important to recognize, I guess the point that I'm asking you to, uh, to then, or the jury would be essentially imposing the standards that military personnel would have to employ during one of these physicals. I would say no, your honor, because as Justice Thomas has repeatedly stated, as many Ferris dissents, injunctions and orders require people to do things. Tort litigation does not. That is a decision that the military can ultimately make whether they want to change their behavior based on the litigation, but no court is going to order the military to make any changes. Okay. Um, counsel, you're, you're out of time for your initial argument. If you want to wrap it up really quickly, I'll, I'll still give you your three minutes rebuttal. Thank you, your honor. And I think that the absence of the compensation and the fact that the court is not ordering the military to make any changes here at the military is perfectly free to make changes based on this or to continue to implement their physicals as they see fit. But there's no indication in the United States has not cited to anything suggesting that how this was done, how the blood draw was conducted in terms of his supervision or lack thereof was pursuant to any sort of military regulation or not. And so in this instance, it's not requiring the military to make any changes. And for that reason, as well as the other side in our brief, we respectfully request that the district court be reversed and Mr. Pritchard's claims be allowed to proceed. All right, very well. You'll, you'll have your three minutes rebuttal. All right, let's hear from the government. Good morning. Okay. Sorry. I was trying to unmute. Uh, good morning. My name is Lowell Sturgill. I'm from the Department of Justice representing the United States. The district court correctly dismissed this case under the FARA's doctrine. As the district court well said in the Thompson case cited in our brief, a pre-induction physical is the first step of military service. And it's undisputed that the purpose of a pre-induction physical is to assess an applicant's fitness for duty. That's a core military purpose. And it's also a military judgment about when to schedule pre-induction physicals. Is it pre, the military has decided in his judgment that it's best done before an individual enlists in the military and that's so they can do the rational thing, which is decide before they enlist somebody, whether they're fit to serve or not, rather than having to wait until afterwards and then find out they're not fit and then have to go through the whole process of de-enlisting somebody or, and all that's involved in that. So this case at its root challenges military judgments in a way that the FARA's doctrine prohibits in multiple ways. In addition, it's important to note that the complaint second guesses, not only the military's decision about when to schedule physical examinations, but also how the military goes about doing that. The complaint argues, for example, that the military ought to provide a one-on-one escort for an individual after their blood is drawn until they go to the waiting area. Well, that would require the military to assign additional manpower to the processing facility and prevent the military from using those resources in other ways. They also say the military should have a special chair to keep people from falling out. And you can just see what this is all about at root, that the complaint challenges military judgments. And that's, of course, one of the key rationales for the FARA's doctrine to begin with. Well, Mr. Sturgill, that may be a rationale, but I mean, the rationales are more dicta. I mean, we're looking at the text of the statute and then the holding of the Supreme Court in FARA's. I mean, the text of the statute, I think Judge McKeegan and I tend to be textualists. We tend to follow Justice Scalia's instruction that statute should be construed consistent with the text. And the exception here to the FTCA is for any claim arising out of the combative activities of the military or naval forces or Coast Guard during time of war. Now, do you agree that this doesn't fit in the text of the statute? I'm sorry. Does? Is this during time of war? It's not, Your Honor. OK, so it doesn't fit. So we look at the holding of FARA's and the holding is the government is not liable under the Federal Tort Claims Act for injuries to servicemen where injuries arise out of or in the course of activity incident to service. So the court there expanded the text of the statute, but did so limiting to my problem here is that Mr. Pritchard was never a serviceman. I mean, don't you agree he never became a serviceman? He never became a serviceman. All right, then he's not covered by the holding, is he? If you would permit me, I need to go back to the first part of your question because I didn't get to give you a complete answer, and I don't want to leave anything on the record, if I might. Sure. So we are not conceding that the FARA's doctrine does not have a textual basis in the FDCA, I just wanted to make that clear. It's hard for me to see how it fits in the text, but okay, tell me how it does fit the text. Two answers, Your Honor. First of all, the argument you made was indeed the one that Justice Scalia made in the Johnson case. And Justice Thomas in his frequent dissents here. Correct. So what I'm trying to get to is that the Supreme Court in Johnson rejected that argument and specifically the textual argument that Justice Scalia made that you have made this morning. So Johnson, so our first answer is that Johnson is controlling precedent. I agree it is. It is five to four. The question is, do we expand the holding farther than the holding of Ferris as determined by Johnson? And that's, I think, what you want us to do. You want us to include persons that are not servicemen under the policies behind Ferris or under the, I don't know, purposes, I guess, rather than the words of the holding. Your Honor, I understand. So on that question, our argument is that this court has said that whether Ferris applies depends on whether, in part, the plaintiff has a military relationship. No, no, I apply the holding of a case, not dicta. And I think that's what you're arguing, dicta in cases, as opposed to the holding of Ferris. I'd like to hear your answer. Would you continue with your answer, please? Sure. So in a number of cases, Major is one case, for example, the court has said that, again, Ferris applies to people who have a military relationship with the government. That's what the court said. And I understand, Judge Griffin, that you think that's dicta. We think it's an important part of the rationale of the case, which is, in our view, tantamount to a holding because it's- Tantamount to a holding? Do we file rationales or do we file holdings? I think you give due respect to the rationale that a prior opinion of this court has said, that's all we're saying. And so our position is that because the plaintiff here applied for enlistment in the army and he basically triggered a military relationship with the government, he himself says that everything that happened in this pre-induction fixal was done military style. It's done for a military purpose, which is a core purpose of the Ferris doctrine. And again, it just, it doesn't make any sense why it would make a difference whether the induction physical was done one day before his induction or one day afterward. You can imagine a scenario where we're in a time where we need to call up people and there's wartime and people are coming through these induction physical facilities one after the other. And, you know, when they come in, just in our mind, it doesn't really matter as a matter of the Ferris doctrine. Really the main difference that the plaintiff argues that does matter is benefits, they say, and it is true because plaintiff was never inducted in the military, he's not entitled to military benefits, but this court in two cases has held that just because somebody's not entitled to military benefits doesn't mean that the Ferris doctrine doesn't apply. One is the Lovely case and Judge Gilman was on that case and another is Sidley. So again, I think if it really comes down to benefits, that's not enough to take something outside the Ferris doctrine where the other two rationales in our the military discipline rationale and the fact that the military operates on a nationwide, worldwide basis, but it has entrance processing facilities across the country. So if this court allows this suit to go forward, that means the military is going to be subject to the varying laws of the 50 states on how it basically runs the proposition of doing entrance exams. And that's one of the reasons that Ferris barred these kinds of suits. Let me ask you this, can you cite a case where the Ferris doctrine has been applied to a person who never actually entered the military service? No, Your Honor. I'm sorry, I cut you off, I don't have a case like that. So this really is sort of a matter of first impression, isn't it? Yes, Your Honor. Hmm. If we continue on with what you were saying about applying different state negligence laws in various ways to these pre-induction physicals, your friend on the other side argues that any jury verdict wouldn't be ordering the military to do anything, so we don't have to worry about that. What is your response to that? So Ferris itself made the point that a damages action against the government under the FTCA will have impacts on how the military makes decisions, even though it's not under an injunctive order, and all of the courts that have addressed these cases have said the same thing. Shomer, for example, the Fifth Circuit was a pre-induction physical case, and it said one of the reasons for applying Ferris in that context is if FTCA suits like that can proceed, even though the remedy is only damages, that can have a negative impact on how the military makes decisions, even though it's not under an injunctive order, and so it's not enough that this case doesn't involve injunctive relief. Ferris itself involved the same kind of question, and it asked and answered the same question, in our view. Now, let me ask you this. I mean, you know, if you look at the basic idea here, you've got the Federal Tort Claim Act, which waives sovereign immunity to allow people to sue the exception, so should we be, you know, exceptions are generally interpreted narrowly, aren't they, as opposed to expansively to the main idea of allowing civilians to file suit against the government? So, correct. The FTCA itself, though, is a waiver of sovereign immunity, so I think that does change things, but I don't think that really there should be a presumption one way or the other. I would just argue that the court should just do the best it can to apply Ferris, as this court and Supreme Court has applied it, and decide one way or the other without any kind of presumption, because I think they sort of balance out, right? The FTCA is a waiver of sovereign immunity, so that puts you in a different playing field, but we're not arguing that there should be a presumption that Ferris applies in this case, just that under the laws, we understand that that's the best way to resolve things. Well, I mean, you're talking about policy, and you want us to really construe the statute in a way that favors the policy that you want, but isn't that really a decision by Congress? And, you know, Congress passed the FTCA to waive sovereign immunity, and then they made these exceptions, and if the exception is not broad enough, if it should cover other things, I mean, isn't that a function of Congress rather than the courts? So, again, our understanding, based on the Johnson opinion from the Supreme Court, is the way the Supreme Court looks at this, they look at this as if the Ferris doctrine has a textual basis in the FTCA. So I understand that you may or may not agree with that, and some courts don't agree with that, but it's the binding law of the land. I think that is the answer to your question. I know, but you seem to, you want us to expand Ferris beyond its holding for policy reasons. You're saying, OK, the holding says it's limited, the exception is limited to servicemen, but that can't be right because the policy would be such that the military would be in a bad situation, and therefore you have to construe it broader than the holding of Ferris for policy reasons. Well, that's not what we do, is it? So, Your Honor, our other answer to that is that the Ferris decision itself didn't involve a person who was not a servicemember. So to the extent that the Ferris opinion used the language that you quote, I mean, I would take the position that's itself dicta, right? Because that question wasn't presented before the court in that case. So I would say Ferris left that question open. And what we're doing is trying to, I'm sorry, go ahead. Well, OK, so it's it should have said individuals that not liable for injuries to individuals where the injuries rise out of or in the course incident to service. Well, if you're not a serviceman, how can it be incident to service? So because, again, the question is whether a person has a military relationship with the government, the way this court looks at it and the fact that this individual applied for the military and went in for what is a core military requirement that they be, their fitness for duty be assessed, triggers that military relationship. And also because of the rationales, I'm now repeating myself, I think. So I apologize for that. But the rationales that the court gave us in Ferris. So if I could just sum up the answer to your question, I think that Ferris didn't address the question before this court because the plaintiff in that case was not. But I'm sorry, he was a service member. So the holding of Ferris doesn't resolve the case. And that throws you into figuring out, well, what's what was the rationale? What's the best way to understand it? And I think I think our position is is the right one. But OK, but as Justice Thomas has said, because Ferris is really inconsistent with the text, it broadens the text of it. Justice Thomas as well, we should be it should be limited. It should not go any farther than than Ferris that that there needs there needs to be a check on it. I mean, you disagree with that or is that no, we can keep broadening Ferris for all sorts of reasons here. So I understand that this is a broadening in a sense that we don't have a case that applies. Ferris in the pre-indictment, but I don't I kind of I kind of think the government's burden is on establishing the exception. I mean, here there's a broad waiver of immunity. Then there's an exception. It's almost like an affirmative defense. And I would think if it's all equal, it's probably on the government to sustain its burden that the exception applies here. And without any authority to that effect, I'm not sure you have. So I would agree with you that it's the government's burden to demonstrate that Ferris applies. I think we've demonstrated that by our arguments based on the rationales of the Ferris doctrine and this court's decisions, which is our position in the case. And that's what this is. Let me let me ask you another question that I realize is sort of coming out of left field. And I apologize for the fact that you're you're already out of town at a time. But I think this is sort of a segue particular connection with all the questions that Judge Griffin has asked you. There's two ways to sue the government. One's under the Federal Tort Claims Act. One's under Bivens. We realize this is not we recognize this is not a Bivens claim. But there's been a lot of cases recently where the Supreme Court has been addressing the question of what's the scope of Bivens and should Bivens be expanded? And they've been very, very clear lately that that Bivens should not be expanded. One of the areas that they always examine in that context is whether a Bivens case involves factors that counsel hesitation. Now, nobody has argued that argued this in the brief. So I know I'm hitting you cold on this, but I'm just sort of curious, what impact would you say, if any, the Supreme Court's reluctance to expand Bivens in connection with the military is something that the court should stay out of? What, if anything, should we be looking towards gaining from looking at these Bivens cases in terms of how to apply Ferris or is it apples and oranges? So I think that there is a parallel to the Ferris doctrine. And the third rationale for Ferris itself is that the Supreme Court is concerned about courts second guessing military judgments in FTCA tort damages suits. And that's essentially the same rationale that has that you refer to that Supreme Court has relied upon in Bivens cases in the United States versus Stanley, for example, as the Ferris Bivens case and goes into this in great detail. So I think that those Ferris Bivens cases do support our position here because they are not interfering with military judgments. Well, they're also much more recent than either Ferris or Johnson, too. Correct. All right. Thank you. All right. Mr. Sturgill, you're out of time. If you want to wrap it up, just a minute or so. So I'm happy to just rest on our breeze at this point. I think we, you know, so thank you very much for hearing us out. Any further questions, Judge Gilman? Judge McKee? Well, let me just ask one thing. You know, you're familiar, of course, with what's called Brown III. That was our our Sixth Circuit case about prenatal injury. Yes. And we held Ferris did not apply to that, didn't we? And that was too, because the child was not in service like the mother was. Now, how do you distinguish Brown III? So Brown does support our position here in that the plaintiff in Brown was a civilian. The civilian claimant Brown was, I guess, was allowed to go forward. Right. I believe it was allowed to go forward. OK, so I'm sorry. It doesn't support us here. I think it's distinguishable because the as you might expect, because what the context of the preinduction physical is, is part and parcel of military service. An applicant is in a military relationship to the government, whereas the civilian infant is not in ways that are materially distinguishable. I'm the mother who was in service and was at a hospital, at a military hospital when the injury occurred to the her child. Right. These those Genesis cases are are are one of a they're sort of a world to themselves. And I think they don't have a lot of carry over to any other part of affairs that I'm aware of. And that would include this case. And I think, again, if anything, the Satterfield case at footnote four is really worth looking at. It said this. I'm going to read it. I apologize. The Supreme Court has consistently observed that selection of personnel from the military is a military decision not subject to judicial scrutiny. So that seems the most pertinent thing I've read from any decision of this court to what this case is actually about. OK, very good. All right. Thank you. Thank you for your argument. Rebuttal. Thank you, Your Honor. As this court has noted, the holding in Ferris applies to service members. And the United States has essentially argued that Ferris involved a service member. So that's the only reason the court used that specific phrase. But I think it's important to note that Ferris was decided in 1950. We've got 73 years of precedent and counsel is not cited to a single case where Ferris has been applied to a civilian such as this. So it is asking the court to expand Ferris and go on beyond even further from the plain language of the FTCA. But I think that I think they're arguing that he's tantamount to a serviceman because he applied because he's an applicant. He should be considered a serviceman. I guess I guess the argument is what's what's wrong with that? Well, I think what's wrong with that is that he he applied, but he still was not a serviceman. And when we're looking at the rationales that have been articulated in Ferris, his civilian status really precludes the bulk of those rationales. I mean, the federal relationship and Ferris and Johnson, the court discussed what that means in terms of the distinctly federal relationship between members of the military and the government. And he's not within the military chain of command at that point. He's referred to as an applicant. He can be rejected or accepted depending on the examination of how he does. And one of the other issues in terms of that federal relationship that's discussed in Johnson is allowing suits to go against the military and having the sight of the injury determine the government's liability when the better, more uniform remedy is the military compensation benefits that are provided by statute. And that's where he gets into the second factor as well. But it relates to that distinctly federal relationship because members of the armed forces are entitled to these federal benefits by virtue of their status as servicemembers. So when you're looking at that and looking at the lack of benefits, I think those are key in here. And I know that the United States has cited Lovely and Sidley for cases that military benefits were not provided, but there's still the underlying rationale for those cases still existed as it relates to Ferris. And Lovely, you're dealing with an ROT cadet who is technically a member of the armed forces. Also, he wasn't entitled to benefits. You also have the factor that the injury or his complaint related to the disciplinary proceedings of his commanding officer to remove him from the ROTC. So you're second guessing the claims or the the disciplinary proceedings of the military in that context. And then sadly, the only reason the servicemember was not entitled to benefits is because the VA determined that his injuries were the result of willful misconduct. Otherwise, those benefits would have been provided. And I see that my time has expired. So unless the court has any more questions, I'll rest on my word. Any further questions, Judge Gilman? Judge McKeague? All right. Thank you. Thank you very much for your argument. The case will be submitted.